Hector COLON

v.

Margaret HECKLER, Secretary of Health and Human Services.

Civ. No. N–83–222 (PCD).

United States District Court,
D. Connecticut.

April 17, 1984.

Christopher M. Royston, New Haven, Conn., for plaintiff.

Thomas J. Riley, Asst. U.S. Atty., New Haven, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final decision of the Secretary of Health and Human Services which terminated plaintiff's social security disability benefits. For the reasons and purposes set forth below, the case is remanded to the secretary for further consideration.

*Administrative Proceedings*

The plaintiff, an unskilled construction worker born in Puerto Rico in 1938, suffered a herniated disc when he fell carrying a heavy object on January 22, 1974. He underwent a laminectomy on January 29, 1976, but his condition did not improve. In a decision dated October 29, 1976, an Administrative Law Judge (ALJ) granted the plaintiff's application for disability insurance benefits finding him to have been disabled within the Social Security Act since January 22, 1974. The ALJ noted the plaintiff's complaints of back and leg pains and inability to remain seated or standing over twenty minutes and found "that the physical limitations of the claimant and his limited vocational background would not permit him to engage in substantial gainful activity." Tr. 166.

On March 5, 1982, the secretary issued a termination notice, on the ground that plaintiff was able to perform substantial gainful activity as of January 1982, and, therefore, was no longer entitled to disability insurance benefits. On April 5, 1982,

the secretary denied plaintiff's request for reconsideration and issued a notice again denying his claim for continuing disability insurance benefits. Plaintiff then requested a hearing before an ALJ, which hearing was held on July 6, 1982, and at which plaintiff was represented by counsel.

On August 25, 1982, ALJ Thomas E. Bennett sustained the secretary's termination of benefits. On October 22, 1982, the plaintiff requested a review by the Appeals Council. On February 23, 1983, the Appeals Council denied the request for review. The plaintiff then brought this action seeking judicial review of the administrative proceedings below. The matter is now before the court on cross-motions for summary judgment.

*The Record*

Plaintiff testified to a variety of alleged impairments, including continued back and leg pain, dizziness, nervousness and anxiety, headaches, and respiratory problems. His back and leg complaints were most frequently and meticulously voiced. After fifteen or twenty minutes standing or sitting, pain in his legs or back required him to change positions. He was unable to bend to do cleaning or tie his shoes, or to walk more than one block, and spends most of his waking hours lying down.

The medical evidence reflects an initial diagnosis of a radicular syndrome, subsequently described as a herniated disc, for which the laminectomy was performed. Failure of the operation to improve his condition resulted in the granting of disability benefits from the date of the injury.

Pursuant to the periodic eligibility redetermination authorized by law, plaintiff was examined in January 1982 at the behest of the Social Security Administration by Dr. Edwin Fierer. His report, dated January 20, 1982, limited its pathological findings to plaintiff's lower back and lower extremities. Dr. Fierer diagnosed the plaintiff as "status post disc surgery with residual pain," noting he "appears to have nerve root compression secondary to lumbar disc." Tr. 202. Positive clinical findings included considerable bilateral muscle spasm in the lower back, positive straight leg raising on the left at 45 degrees, reflective of nerve root impingement, positive Lasegue's sign, weakness of dorsiflexion of the great toe, proximal muscle weakness, which was neither found to be related nor unrelated to his back but could be. He was found to be unable to stand on his toes or heels. He could bend forward at the hips only to 40 degrees, backward to 15 degrees, and to each side only 10–15 degrees, all such limitation being accompanied by pain. He walked with a limp and manifested sensory and motor deficits reflective of nerve function impairment. The doctor noted consistent pain throughout the examination and that plaintiff "appear[ed] to be in distress" throughout. Tr. 201. He was found to be independent in his daily living activities. The doctor expressed his opinion, "I don't think that he could hold down *any sort of a job that would involve standing for any period of time.*" Tr. 201 (emphasis added).

The medical review at the instance of the ALJ, by Dr. Lynn, who had not examined the plaintiff, applied 1.05, Part C (Disorders of the Spine) guidelines for finding disability which includes herniated nucleus pulposus (disc) with pain, muscle spasm, and significant limitation of motion and radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. Tr. 221. It was Dr. Lynn's opinion that the record lacked reflection of neurological dysfunction in the absence of clear muscle weakness and motor loss and of good evidence of reflex loss. Thus he found that the claimant "did not quite meet the level of severity required in 1.05C," Tr. 222, nor did he have any other indicia of disability to a degree required by the standards of the administration as to disability. He did not refute nor dismiss any of Dr. Fierer's findings or opinions.

The record contains clinic notes from Yale-New Haven Hospital concerning plaintiff's back condition, reports reflecting diagnosis and treatment of a chest pain syndrome for which the heart is under consideration, but without a definitive diagnosis,

and highly conclusory reports from a psychiatrist and a neurologist, both asserting that plaintiff is permanently and totally disabled from working. There was no medical record for the period from the determination of plaintiff's entitlement to benefits, on October 29, 1976, until the examination by Dr. Fierer in January 1982.

The ALJ, after considering all the evidence and the analysis of the record provided by the medical advisor to whom he had referred the file for review, determined that plaintiff's disability had ceased as of January 1982, the date of the consultative examination of Dr. Fierer. Finding the plaintiff's claim of severe and nearly continuous pain not creditable, the ALJ ruled that "the evidence fails to demonstrate musculoskeletal impairments (or other health impairments) which would have the effect of significantly hindering or interfering with normal movement involved in performing work-related activities of a light and/or sedentary nature in jobs which gave the claimant an opportunity to stand/sit intermittently over a period of an eight-hour work day." Tr. 20. There is nothing in the record to suggest any demonstrated capability of bodily function, either in movement or strength, to sustain a finding of ability to do any particular type of job for any particular sustained period of time.

*Discussion*

In reviewing this final decision of the secretary, the court is limited to deciding whether the ALJ correctly applied the governing law to findings of fact supported by "substantial evidence on the record as a whole." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "If the factual findings ... are supported by substantial evidence, they must be taken as conclusive." *Fusco v. Schweiker*, No. 82–1071, slip op. at 3 (D.Conn. Oct. 17, 1983), citing *Bastien v. Califano*, 572 F.2d 908, 192 (2d Cir.1978). However, the court retains the responsibility "to reverse or remand if the Secretary's decision is not supported by substantial evidence." *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981). In this context, the

court must remain aware that the Social Security Act is remedial legislation and therefore should be applied liberally. *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979).

Section 423(d)(1)(A) of Title 42 defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Subdivision (2)(A) requires that an individual be unable to perform his previous work and be unable "considering his age, education and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives."

 In a termination case, in which the secretary cuts off benefits previously awarded, it is generally held, following dictum in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), that the claimant retains the burden to show continuing disability of the magnitude required by law. *See, e.g., Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir.1972); *Crosby v. Schweiker*, 650 F.2d 777, 778 (5th Cir.1981); *Magee v. Califano*, 494 F.Supp. 162, 166 (W.D.N.Y.1980); *Memoli v. Califano*, 463 F.Supp. 578, 582 (S.D.N.Y.1978); *Schauer v. Schweiker*, 675 F.2d 55 (2d Cir. 1982) (discussing cases). *But see, Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982) (secretary must rebut presumption of continuing disability created by original determination).

The Second Circuit would appear to follow the prevailing view, *see Delamater v. Schweiker*, 721 F.2d 50 (2d Cir.1983) (per curiam), subject to the dual caveats that the concept of burden of proof is particularly elusive in a social security proceeding, *Schauer*, 675 F.2d at 57, and that:

... not withstanding the various courts' [diverse] statements [of the proper allocation of burden in a termination case], we are unaware of any case in which the

Secretary's termination of benefits previously awarded has been upheld in the absence of substantial evidence that the recipient's disability had ended.

*Id.* at 59.

■ Our Court of Appeals has outlined the four objective and subjective factors to be examined by a reviewing court in deciding whether there is substantial evidence to support the secretary's decision:

(1) objective medical facts;

(2) diagnoses or medical opinions based on these facts;

(3) subjective evidence of pain and disability testified to by the claimant and family and others; and

(4) the claimant's educational background, age and work experience.

*Rivera v. Schweiker,* 717 F.2d 719 (2d Cir. 1983).

■ It is well established in this circuit that evaluation of plaintiff's credibility concerning the severity of his pain is of utmost importance, as "pain, even if uncorroborated by objective medical findings, may demonstrate disability." *Fusco,* No. 82–1071 at 6, citing *Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir.1983). An inability to move, bend, lift, sit or stand due to pain is no less real a disability. Here there was substantial evidence of pain and dysfunction in the back and lower extremities. Pain which is not objectively confirmable, is suspect, since tolerance of pain can vary greatly from one person to another, particularly when tolerance is disadvantageous such as when it bears on one's entitlement to disability benefits. While pain is properly suspect, an ALJ is not authorized to reject an application based on his or her assessment of a claimant's contention that he or she has pain.

The ALJ found an absence of disability on the basis of a want of confirmation of the claimed pain as neurologically caused and as not likely to be caused by neurological pathology. He based his finding on the report of the reviewing doctor who did not, for want of an actual examination, evaluate the credibility of plaintiff's claims of disa-

bling pain. He also relied on the report of the SSA consultative physician, although it does not explain nor discredit the examining physician's report of pain, which was corroborated, at least to some degree. Dr. Fierer repeatedly and unequivocally cited "pain" and "distress" during his examination. ("It was painful for him to get on the table and even to walk from one side of the examining room to the other." Tr. 201). The examining doctor concluded: "I think that he is independent in his activities of daily living, but I don't think that he could hold down any sort of job that would involve standing for any period of time." *Id.*

The ALJ assessed plaintiff's complaints of pain as follows:

If the claimant had been suffering severe nearly continuous pain since he states he became unable to work (i.e. January 22, 1978) there would no doubt be physical indicia of the results thereof (including greatly reduced use of muscles such as muscle atrophy or gross losses of muscle tone).... Thus, the testimony herein, insofar as it states or suggest [sic] that the claimant has suffered severe pain over all or substantial parts of the period since January 22, 1974 is not creditable. Tr. 20.

■ In so reasoning, the ALJ has articulated his own assessment of plaintiff's condition, supplementing or perhaps supplanting the medical expert. This fatally taints the decision. *Hall v. Celebrezze,* 314 F.2d 686 (6th Cir.1963); *Lachey v. Secretary,* 508 F.Supp. 726 (S.D.Ohio 1981); *Marmon v. Califano,* 459 F.Supp. 369 (D.Mont.1978). Moreover, the ALJ reached back in time to consider plaintiff's complaints of pain before January 1982; concededly the relevant time for purposes of this adjudication. Tr. 38. Doing so violated the ground rules properly set by the ALJ.

The January 1982 report of Dr. Fierer, SSA's examining physician, corroborates the plaintiff's claims of pain and limited use of his back and established some objective corroboration and confirmation of an existing and logical physiological explanation for the existence of plaintiff's condi-

tion and its resulting disabling characteristics and their extent. In short, the report of Dr. Fierer, while not exhaustive nor preclusive, clearly suggests the existence of a physiological condition with substantial disabling characteristics. The ALJ chose to premise his findings on the reviewing doctor's report which does not provide "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

It may well be that the reviewing doctor's remarks with respect to the absence of neurological deficits, absence of motor weakness and/or the absence of loss of reflexes, and the ALJ's observations on the absence of factors which would be expected to follow upon long term nerve root impairment, i.e. atrophy, loss of muscle tone, or sensation interruptions or loss, are sound bases for denial of plaintiff's claim. The present record does not sustain the absence of such factors as a sound medical basis for finding the absence of disability nor that plaintiff has any capacity to pursue any particular gainful employment. In short, Dr. Fierer found corroboration of plaintiff's claims of disabling pain, but Dr. Lynn and the ALJ did not find an adequate medical explanation of those claims to warrant finding disability.

While the record would support a finding of disability, "in the absence of substantial evidence that this recipient's disability has ended," *Schauer*, 675 F.2d at 59, this court may not substitute its judgment for that of the secretary nor order benefits to be paid unless the absence of anything further to consider is clearly reflected in the record such that remand is purposeless. That is not the case here. The secretary and the ALJ, on remand, should determine whether further consideration of the question of disability by Dr. Fierer, in response to the questions raised by the reviewing doctor and the ALJ and also in relation to plaintiff's physical capabilities, i.e., motion, standing, sitting, strength, would provide medical evidence bearing on the propriety of terminating plaintiff's benefits.

Accordingly, the case is remanded to the secretary for further consideration which shall be completed and reported to the court within ninety (90) days of this order. In the absence of further evidence in the record at the end of the ninety-day period, the court will amend its order and reverse the decision of the secretary denying benefits, remand to require the secretary to calculate the benefits due, and order same paid on the basis of plaintiff's entitlement to benefits as provided by law.

SO ORDERED.