**Joseph WASHINGTON, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

No. 83 Civ. 5721 (EW).

United States District Court, S.D. New York.

Nov. 1, 1986.

Conrad A. Johnson, Attorney-in-Charge, The Legal Aid Society, New York City, for plaintiff; Olive L. Clarke, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Steven E. Obus, Asst. U.S. Atty., of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff, Joseph Washington, commenced this action under 42 U.S.C. section 405(g) and section 1383(c)(3) to review a final determination of the defendant; the Secretary of Health and Human Services (the "Secretary"), which denied plaintiff's applications for federal disability insurance benefits and supplemental security income (SSI) based on his alleged disability.

The defendant and plaintiff both move for judgment on the pleadings. Plaintiff alternatively cross moves to vacate and remand the administrative decision to the Secretary for further proceedings.

### Background

Plaintiff, 46 years of age and a high school graduate who was employed for over twenty years, first as a clerk in and then as supervisor of a shipping department, applied for disability insurance benefits on May 3, 1982 based on alleged disability arising from a blocked artery. His application was denied initially and then again on reconsideration. On May 14, 1982 plaintiff requested SSI benefits which were also denied. At his request, a hearing was held on both applications. An Administrative Law Judge (ALJ) considered the case de novo and found the plaintiff not to be disabled. The Appeals Council declined to review this decision on June 15, 1983, and therefore it became the final decision of the Secretary. Thereupon plaintiff commenced this action on August 2, 1983. The case was remanded on November 14, 1984 to the Secretary for a rehearing due to partial inaudibility of the tape recording of plaintiff's original administrative hearing. A de novo hearing was conducted on June 7, 1985, before another ALJ, and on September 10, 1985 he issued a recommendation that plaintiff neither be considered disabled nor entitled to disability benefits.

On December 10, 1985 the Appeals Council decided that additional evidence should be obtained from plaintiff's treating physician, and that further clarification of the basis for the ALJ's recommendation should be obtained. Thereafter, the ALJ again recommended that plaintiff be found not to

be disabled, and on June 11, 1986 the Appeals Council accepted this recommendation.

## Discussion

■ The issue on these motions is whether or not the record contains substantial evidence to support the Secretary's decision that plaintiff is not disabled under 42 U.S.C. section 423(d).[1] Thus, if the court finds that there is substantial evidence supporting the Secretary's determination, the Secretary's decision must be affirmed, even if there is also substantial evidence in support of plaintiff's position.[2] Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3]

■ It is the function of the Secretary, not the court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.[4] Consonant with this principle, while the opinions of treating physicians deserve special respect, genuine conflicts in the medical evidence are for the Secretary to resolve.[5] However, it should be noted that the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary,[6] and here the plaintiff's treating physicians have found him to be disabled. It is also uncontradicted that plaintiff suffers from a heart condition.

Plaintiff contends that the Administrative Law Judge's decision ignored the report of plaintiff's treating facility and physicians despite having those assessments available to him at the time of his recommended decision; that his second decision, dated April 7, 1986, on remand from the Appeals Council, is silent as to plaintiff's dizziness as an ailment; that the ALJ ignored plaintiff's testimony and his treating facility's documentation of chest pains; and that in his April 1986 decision, the ALJ admits that plaintiff's capacity to perform the full range of sedentary work is reduced by his nonexertional limitations.

## A. Consideration of Medical Testimony

A medical report from the Sidney Hillman Health Center, dated March 18, 1983, evaluated the plaintiff's functional capacity as being able to sit for only two hours, stand two hours, sit and stand, alternatively, for four hours, and that he was unable to walk three city blocks. The plaintiff's treating facility reported on March 27, 1985 that this continued to be plaintiff's residual functional capacity, and his treating physician, Dr. Awini, stated as recently as February 26, 1986 that his condition had not changed. However, there is substantial counter evidence supporting the Secretary's finding of no disability.

On July 23, 1985 Dr. Selig Ginsburg, a consultative examining physician for the Secretary, found that based upon the objective medical evidence available to him, plaintiff's ability to sit, stand, and handle objects was unlimited and that he was subject to no environmental restrictions. Dr. Stuart Fox, another consultative examining physician, had already found, on June 8, 1982, that plaintiff could sit for 6 hours, stand for one hour and walk for one-half hour in an eight-hour day. Dr. Wolfermann, a medical advisor and reviewing physician, found plaintiff could sit eight hours, walk six hours and stand six hours in an eight-hour day, and Dr. Samuels, a second medical advisor and reviewing physician, found that plaintiff could sit and stand for

---

1. *See Schauer v. Schweiker,* 675 F.2d 55, 58 (2d Cir.1982).

2. *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982).

3. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

4. *Aponte v. Secretary of Health and Human Services,* 728 F.2d 588, 591 (2d Cir.1984) (quoting *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983)).

5. *Id.*

6. *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978).

six hours a day and frequently lift or carry up to 25 pounds. No physician noted any sensory or mental impairments, or any limitations on plaintiff's ability to use his hands for repetitive grasping and fine manipulations. All of these evaluations fit within the Social Security Ruling 83–10 which states that sedentary work involves sitting 6 hours per day and walking and standing not in excess of two hours each day.

■ Thus, it is clear that substantial medical evidence exists, and the ALJ's decision indicates that this evidence was considered by him, which is contrary to the reports of plaintiff's treating physicians. While the ALJ might have been more precise and categorical in discussing why the plaintiff's treating physicians' opinions were not persuasive in regard to establishing his disability, he: (1) clearly put forth the opposing medical evaluations and the weight he attached to each of them;[7] (2) stated that he did not find plaintiff's subjective medical evidence, which plaintiff's treating physicians accepted in making their diagnoses, credible; and (3) explicitly stated that he did not feel the reports of the plaintiff's treating physicians were sufficient to controvert the functional assessments of Dr. Fox and Dr. Ginsberg. This is sufficient to show that the ALJ did not ignore the reports of plaintiff's treating physicians and facility, and that the reports of the treating physicians were countered by substantial evidence.

### B. Chest Pains and Dizziness

■ Plaintiff's contention that the ALJ's April 1986 decision ignored, or failed to properly consider, evidence of his dizziness and chest pains is unsupported by the record. The ALJ had already addressed the issue of plaintiff's chest pains in his September 10, 1985 recommended decision, where he found that the degree of pain alleged by the plaintiff was not corroborated by the evidence, including a consideration of the testimony and demeanor of plaintiff at the hearing. The ALJ explicitly incorporated this prior decision by reference into his April 1986 decision, explaining that he felt reviewing such evidence would serve no further purpose.

Moreover, it is clear that the ALJ relied heavily on Dr. Ginsburg's examination, and Dr. Ginsburg noted that plaintiff's subjective complaints of chest pain were " out of proportion to the objective findings" and that his complaints of pain and dizziness were "not borne out by the objective findings available at this time."[8] The objective evidence and evaluations which the ALJ based his findings on, coupled with his evaluation of the credibility of the subjective medical evidence testified to by the plaintiff, support the ALJ's factoring of the plaintiff's chest pain symptoms in determining the plaintiff's functional capacity.

■ Similarly, plaintiff's claims of dizziness were not ignored by the ALJ, but rather the extent of the dizziness was called into question by both the ALJ's determination that the plaintiff's testimony on this point was not fully credible and his finding that there was a lack of corroboration of this symptom by objective medical evidence. In fact, it is clear that the ALJ considered plaintiff's claims of dizziness because he explicitly found that plaintiff's symptoms of dizziness caused plaintiff to have nonexertional limitations resulting in *minimal* limitations in stooping, crouching, climbing, kneeling, or crawling which pre-

---

**7.** He stated that the assessments of nonexamining physicians employed at lower administrative adjudicative levels are given very little probative weight.

**8.** While Dr. Ginsburg recommended that further testing should be done, it appears that at the time of his evaluation he had the same information before him that plaintiff's treating physicians had before them, and on which they relied in forming their diagnoses. Moreover, the ex-

tent of the plaintiff's symptoms of dizziness and chest pains referred to by plaintiff's treating physicians were based on subjective evidence which the ALJ found not to be credible. Therefore, while plaintiff may have appeared subjectively disabled, this was rejected by the ALJ based on the record of objective evidence as well as the demeanor of the claimant in testifying to his condition.

vented him from engaging in any of those activities on a *frequent* basis. However, as will be discussed below, these limitations were not found to be disabling.

### C. Nonexertional Limitations

■ Finally, in light of the recent decision by our Court of Appeals in *Bapp v. Bowen*,[9] the ALJ's use of the medical vocational guidelines (the grids) to assess whether plaintiff was disabled was proper. He determined that while plaintiff's nonexertional limitations reduced his residual functional capacity for the full range of sedentary work, they did not significantly diminish his ability to perform the full range of employment indicated by the grid's sedentary base, and therefore he was not required to have taken testimony from a vocational expert, or other similar evidence, regarding the existence of jobs in the national economy for an individual with plaintiff's limitations.

In *Bapp*, the court held that:

... if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations,' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments.[10]

In such a situation, the Secretary must introduce testimony of a vocational expert, or other similar evidence, that jobs exist in the economy which claimant can obtain and perform.[11]

Here, while the ALJ indicated that, "The claimant's residual functional capacity for the full range of sedentary work is reduced by his nonexertional limitations,"[12] he explicitly determined that the claimant had "failed to establish that he was unable to perform the exertional and nonexertional

requirements of sedentary work in terms of an ordinary workday on a regular and continuing basis in the competitive job market."[13] The ALJ noted that the Secretary has stated that substantially all of the exertional requirements of most sedentary jobs would not require a person to crouch or to stoop *frequently*, and that if a person can stoop occasionally in order to lift objects, then the sedentary occupational base is virtually intact.[14] He went on to find that plaintiff was not significantly limited by his nonexertional limitations from performing unskilled sedentary work, and that, moreover, plaintiff's acquired work skills and functional capacity were also sufficient to meet the requirements of skilled or semi-skilled work functions of other sedentary work.[15]

In sum, after the ALJ considered the work skills, such as clerical skills, which plaintiff had acquired, and, while acknowledging that the plaintiff's nonexertional limitations are not factored into the grids, he determined that plaintiff was not disabled based on the fact that, in considering all the unskilled sedentary occupations which do not require such nonexertional capabilities as bending, kneeling, and crawling, plaintiff would be able to perform substantially all of the the exertional requirements of most sedentary jobs.

Thus it is clear that the ALJ's finding that plaintiff was not disabled, based on the grids, cannot be said to have been improper.

### Conclusion

The defendant's motion for judgment on the pleadings confirming the decision of the Secretary is granted on the ground that the Secretary's determination that plaintiff

---

9.  802 F.2d 601 (2d Cir.1986).

10.  *Bapp v. Bowen*, 802 F.2d 601 (2d Cir.1986) at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir.1983)).

11.  *Id.* at 603.

12.  Tr. at 192.

13.  Tr. at 190.

14.  As noted above, the ALJ found that plaintiff's nonexertional limitations prevented him from *frequently* stooping or crouching.

15.  Tr. at 192.

is not disabled is supported by substantial evidence.

So ordered.